IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JUAN SANTIAGO LOPEZ,<br><br>Petitioner,<br><br>vs.<br><br>DONALD J. TRUMP, in their official capacity as President of the United States; TODD BLANCHE, in their official capacity as Secretary of the United States Department of Homeland Security; ALLEN GILL, in their official capacity as Field Office Director of Omaha office of United States Immigration and Customs Enforcement; MARK WAYNE MULLIN, in their official capacity as Attorney General of the United States; DAVID J VENTURELLA, in their official capacity as Acting Director of the United States Immigration and Customs Enforcement; PETER BERG, in their official capacity as St. Paul Field Office Director for Enforcement and Removal Operations, United States Immigration and Customs Enforcement; and WARDEN MCCOOK, in their official capacity as Warden of the McCook Detention Center,<br><br>Respondents. | **4:26CV3286**<br><br>**MEMORANDUM AND ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241** |

This case is before the Court on Petitioner Juan Santiago Lopez's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241. Filing 1. In his Petition, Santiago Lopez—who was born in Mexico but came to the United States in 2001—challenges his detention by Immigration and Customs Enforcement (ICE) after a stop of the vehicle in which he was a passenger by a Nebraska State Patrol Officer on August 11, 2026. Filing 1 at 2 (¶ 2), 4 (¶ 15). He asks the Court to grant his Petition and enjoin his continued detention by Respondents. Filing 1 at 3 (¶ 7). For the

reasons stated below, Santiago Lopez's Petition is denied without a hearing because it appears from the Petition that he is not entitled to a writ of habeas corpus. 28 U.S.C. § 2243.

# I. INTRODUCTION

## A. Factual Background

The factual background here is drawn primarily from Santiago Lopez's Petition. It is then supplemented where appropriate with facts drawn from the documents attached to his Petition and the documents attached to the Federal Respondents' return.[1]

Santiago Lopez, a native and citizen of Mexico, alleges that prior to his detention he was living in Lincoln, Nebraska, with his wife and children. Filing 1 at 4 (¶ 15); Filing 18 at 3 (¶ 12). He alleges that he came to the United States in 2001, but he does not allege where, when, how, or whether he was admitted or paroled into the United States. Filing 1 at 4 (¶ 15); Filing 18 at 3 (¶ 13) ("Petitioner entered the United States at or near an unknown location on or about an unknown date."). He alleges that at some point he filed an application for asylum as he fears persecution if he is returned to Mexico; that he is "eligible" for a U non-immigrant status visa as the victim of an aggravated armed threat in 2022; and that he is prima facie eligible for withholding of removal. Filing 1 at 1–2 (¶ 6).[2] Notwithstanding these allegations, Santiago Lopez's Form I-213 Record of

[1] Santiago Lopez attached to his Petition a Department of Homeland Security (DHS) Form I-862 Notice to Appear directed to him dated August 12, 2026. Filing 1-1, and his DHS Form I-213 Record of Deportable/Inadmissible Alien, Filing 1-2. The Federal Respondents are all but the Warden of the McCook Detention Center. The Federal Respondents attached to their Return the Declaration of Deportation Officer Daniel Archer, Filing 18; an identical copy of Santiago Lopez's Form I-862, Filing 18-1; and a copy of the Warrant for Arrest of Alien for Santiago Lopez dated August 11, 2026, Filing 18-2. DO Archer based his declaration "upon [his] professional knowledge, information obtained from other individuals employed by ICE, and information obtained from DHS records." Filing 18 at 1 (¶ 3). The Warden of the McCook Detention Center, who is identified in this ruling as the State Respondent, also filed a Return, but he asserted only that he is a nominal respondent as Santiago Lopez's physical custodian and therefore takes no position on the substantive issues raised in the Petition and attached no documents to his Return. Filing 19 at 1–2.

[2] Santiago Lopez was encountered by Border Patrol once in El Paso, Texas, on July 30, 2002; four times in Columbus, New Mexico, on February 12, 15, 16, and March 6, 2004; and once in Douglas, Arizona on March 9, 2004. Filing 18 at 4–5 (¶¶ 14–19). Each time he was granted voluntary return to Mexico. Filing 18 at 4–5 (¶¶ 14–19).

Deportable/Inadmissible Alien shows, "Subject stated he has no pending applications nor did record checks produce any" as of August 11, 2026. Filing 1-2 at 4.

Santiago Lopez's factual allegations concerning a vehicle stop leading to his arrest and his detention are the following:

> 2. Petitioner was detained following a traffic stop of a vehicle in which he was the passenger by the Nebraska State Patrol, around Lincoln, Nebraska on August 11, 2026, and remains in civil detention in the custody of the Department of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE") at the McCook Detention Facility in McCook, Nebraska.
>
> * * *
>
> 23. Petitioner was detained during a traffic stop on Interstate 80 near Lincoln, Nebraska on August 11, 2026.
>
> 24. Petitioner was forced to identify himself and produce identification, even though he was not the driver of the vehicle and the officer who initiated the stop had no reasonable, or articulable suspicion that he had committed a crime.
>
> 25. The Petitioner was told that he had no right "to remain silent" as that right was reserved for U.S. citizens. He maintained his right to not answer the officers' questions, although he did provide identification, and he was placed in a locked patrol vehicle for over an hour with no air conditioning. He was forced to call 911 for help from the back of the patrol vehicle.
>
> 26. The officer who detained the Petitioner had no reasonable suspicion that he had committed a crime. There was no warrant or wants for his arrest. He was not asked any questions by the officer regarding his status in the United States. He produced identification when asked. The I-213 filed by Immigration and Customs Enforcement states that at the time of arrest "a I-200 Warrant of Arrest was issued out and sent to the State Trooper who then placed the subjects under arrest". The I-213 continues and states that the "subject was served with a Warrant of Arrest" this was done on August 12, 2026 after the Petitioner had been held overnight in the Sarpy County Jail and was transported to the Omaha Field office. The Petitioner was not given any of the documents listed in the I-213. The only document the Petitioner was given was a copy of the I-213 which was given to him in the detention facility on August 17, 2026.

Filing 1 at 2 (¶ 2), 6–7 (¶¶ 23–26). The Form I-213 Record of Deportable/Inadmissible Alien submitted by Santiago Lopez states that the traffic stop was "for speeding (75mph in a 55mph zone) at approximately 1900 hrs." Filing 1-2 at 3. The arrest warrant attached to the Federal

Respondents' Return shows in the Certificate of Service that it was served on Santiago Lopez August 11, 2026, at the Sarpy County Jail and that it was read to him in Spanish. Filing 18-2.

The Federal Respondents' declarant provides somewhat more and different details about Santiago Lopez's stop, arrest, and detention:

> 20. On August 11, 2026, Petitioner was one of three individuals encountered by the Nebraska State Patrol during a traffic stop at mile marker 395 in Lincoln, NE. When asked for identification, all three individuals handed the Trooper Mexican I.D. Cards and refused to talk without a lawyer present. [Enforcement Removal Operations (ERO)] Duty officer was called, and record checks were conducted which revealed Petitioner did not have lawful status to be present in the United States. Pursuant to ICE's 287(g) [8 U.S.C. § 1357(g)] program, the State Trooper placed Petitioner under arrest before a Warrant of Arrest could be issued due to the Petitioner being considered a flight risk since he was on the interstate in a working vehicle. Petitioner was transported and booked into Sarpy County Jail where he was served a Warrant for Arrest of Alien. ICE records do not reflect any 911 call, the length of Petitioner's time spent in the Nebraska State Patrol vehicle, or the temperature of the vehicle.
>
> 21. On August 12, 2026, Petitioner was processed and served a Notice to Appear.

Filing 18 at 4–5 (¶¶ 20–21).

Santiago Lopez alleges that he has no criminal charges in the United States and that none are pending following the traffic stop. Filing 1 at 2 (¶ 4). He alleges that he has nevertheless been detained since approximately August 11, 2026. Filing 1 at 3 (¶ 8). Santiago Lopez alleges that he is now the subject of a removal proceeding based upon the charges of being present in the United States without being "admitted or paroled, or who arrived in the [United States] at any time or place other than as designated by the Attorney General" under the Immigration and Nationality Act (INA) § 212(a)(6)(A)(i), codified at 8 U.S.C. § 1182(a)(6)(A)(i), and he alleges "implausibly" under INA § 212(a)(7)(A)(i)(I), codified at 8 U.S.C. § 1182(a)(7)(A)(i)(I), which makes inadmissible any immigrant who at the time of application for admission is not in possession of valid immigration documents. Filing 1 at 4 (¶ 15); *see also* Filing 1-1 at 1, 4. DO Archer avers that

Santiago Lopez "has a merit hearing on October 05, 2026." Filing 18 at 5 (¶ 23). The parties have not informed the Court of the results of that hearing.

### B. Procedural Background

In his Petition filed on September 17, 2026, through counsel, Santiago Lopez asserts four causes of action. The first alleges "Violation of the Due Process Clause of the Fifth Amendment of the United States Constitution" based (1) on Santiago Lopez's allegedly unjustified continued detention, and (2) his apprehension during a routine traffic stop, his forced production of his identification, and his placement in an unairconditioned "sealed" cruiser for over an hour. Filing 1 at 20 (¶¶ 66–67). The second cause of action alleges "Violation of Immigration and Nationality Act" based on Santiago Lopez's allegedly wrongful detention under 8 U.S.C. § 1225(b)(2) without bond instead of under 8 U.S.C. § 1226(a) and the wrongful adoption of "a policy and practice arguing all noncitizens, such as Petitioner, are subject to mandatory detention under § 1225(b)(2)." Filing 1 at 21 (¶¶ 70–72). The third cause of action alleges "Violation of The Fourth Amendment of the US Constitution" based on the enforcement of § 1225(b)(2) inside the United States compelling persons to demonstrate their legal status in the United States and seek admission upon any interaction with immigration officers instead of requiring police to have a warrant or probable cause that a person committed a crime to arrest that person. Filing 1 at 21–22 (¶ 73). The fourth cause of action alleges "Violation of the Fourteenth Amendment of the Constitution" based on (1) an alleged violation of equal protection by subjecting Santiago Lopez to an illegal search and by detaining him without a warrant "simply because he was brown and could not proof [sic] legal status in the United States" and (2) based on his contention that § 1225(b)(2) "allows for the loss of life, liberty, and property based upon ethnicity." Filing 1 at 22–23 (¶ 74).

As relief, Santiago Lopez prays that the Court will grant the following:

1) Assume jurisdiction over this matter;

2) Order the immediate release of Petitioner pending these proceedings;

3) Order Respondents not to transfer Petitioner out of the District of Nebraska during the pendency of these proceedings to preserve jurisdiction and access to counsel;

4) Declare that Respondents' actions to detain Petitioner violate the Due Process Clause of the Fifth Amendment, Violate the Fourth Amendment Search and Seizures Clause, violated the Fourteenth Amendment right to equal protections and violates the Immigration and Nationality Act;

5) Issue a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 and order Respondents to immediately release Petitioner from custody in accordance with the bond order from the IJ, or, in the alternative, order Respondents to show cause why this Petition should not be granted within three days;

6) Award reasonable attorneys' fees and costs for this action; and

7) Grant such further relief as the Court deems just and proper.

Filing 1 at 22–23 (Prayer for Relief).

On September 22, 2026, the Court entered an Order to Show Cause that *inter alia* directed Santiago Lopez to serve his Petition and a copy of the Order to Show Cause on Respondents without delay and to file proof of such service with the Court within twenty-four hours of effecting such service. Filing 4. Summonses were returned executed on all Respondents on September 28, 2026. Filing 13; Filing 14; Filing 15. The Federal Respondents filed a Return on September 28, 2026, with supporting documents. Filing 16; Filing 17; Filing 18. The State Respondent filed a Return on September 29, 2026, asserting in essence that he is only a nominal respondent as Santiago Lopez's physical custodian and that he takes no position on the substantive issues raised in the Petition. Filing 19 at 1–2. On September 30, 2026, Santiago Lopez filed his Reply. Filing 20.

## II. LEGAL ANALYSIS

The statute that sets out the applicable procedure for § 2241 habeas actions, 28 U.S.C. § 2243, provides in part,

> A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.

28 U.S.C. § 2243. Here, it appears from Santiago Lopez's Petition that Santiago Lopez is not entitled to a writ of habeas corpus. 28 U.S.C. § 2243. Thus, the Court will now dispose of the Petition without a hearing. The Court's explanation of this disposition begins with a summary of the applicable standards for habeas relief pursuant to 28 U.S.C. § 2241.

### A. Standards for Habeas Relief under 28 U.S.C. § 2241

> The habeas statute at issue here provides in pertinent part as follows:
>
> (a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. The order of a circuit judge shall be entered in the records of the district court of the district wherein the restraint complained of is had.
>
> * * *
>
> (c) The writ of habeas corpus shall not extend to a prisoner unless--
>
>> (1) He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or
>>
>> (2) He is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or
>>
>> (3) He is in custody in violation of the Constitution or laws or treaties of the United States; or
>>
>> (4) He, being a citizen of a foreign state and domiciled therein is in custody for an act done or omitted under any alleged right, title, authority, privilege, protection, or exemption claimed under the commission, order or sanction of any foreign state, or under color thereof, the validity and effect of which depend upon the law of nations; or
>>
>> (5) It is necessary to bring him into court to testify or for trial.

28 U.S.C. § 2241(a), (c). "[A] habeas court is 'not bound in every case' to issue the writ." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (quoting *Ex parte Royall*, 117 U.S. 241, 251 (1886)). Instead,

"[t]he habeas statute provides only that a writ of habeas corpus '*may* be granted.'" *Id.* (quoting 28 U.S.C. § 2241(a), with emphasis added by the Supreme Court).

As the United States Supreme Court explained, "In enacting the present Title 28 of the United States Code [in 1948], Congress largely recodified the federal courts' pre-existing habeas authority in §§ 2241 and 2243, which, respectively, confer the power to grant the writ and direct the issuing court to 'dispose of the matter as law and justice require.'" *Jones v. Hendrix*, 599 U.S. 465, 473 (2023) (quoting 62 Stat 869, 964–65). The Supreme Court explained further, "Habeas is at its core a remedy for unlawful executive detention." *Manaf*, 553 U.S. at 693 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 536 (2004) (plurality opinion)). To put it another way, "Habeas has traditionally been a means to secure *release* from unlawful detention. . . ." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) (emphasis in the original).

The core concern of habeas as a means to challenge detention is apparent from the language of § 2241. Under the statute, the writ does not extend to a prisoner unless he or she falls into one of the categories listed in § 2241(c). *See* 28 U.S.C. § 2241(c) ("The writ of habeas corpus shall not extend to a prisoner unless" the prisoner falls into one of the listed categories). One such category—and the only one at issue here—is that the prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Supreme Court has recognized that § 2241(c)(3) confers on a district court jurisdiction to hear habeas corpus challenges by aliens to the legality of their detention. *Rasul v. Bush*, 542 U.S. 466, 483–84 (2004) ("[Alien] Petitioners contend that they are being held in federal custody in violation of the laws of the United States. . . . Section 2241, by its terms, requires nothing more."); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) ("We note at the outset that the primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear these cases," which were

brought by aliens challenging their detention after they were ordered removed (citing 28 U.S.C. § 2241(c)(3))). "The typical remedy for such detention [under § 2241(c)(3)] is, of course, release." *Munaf*, 553 U.S. at 693 (citing *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973), which states, "[T]he traditional function of the writ is to secure release from illegal custody").

The Court will apply these standards to Santiago Lopez's claims in turn.

**B. The Alleged Fifth Amendment Due Process Violations**

Santiago Lopez's first cause of action for § 2241 habeas relief alleges "Violation of the Due Process Clause of the Fifth Amendment of the United States Constitution." Filing 1 at 20. The Court reads this claim to have two distinct parts: (1) a due process claim based on Santiago Lopez's allegations of unjustified continued detention without demonstrating the need to detain him, citing *Zadvydas v. Davis*, 533 U.S. 678 (2001), Filing 1 at 20 (¶ 66); and (2) a due process claim based on Santiago Lopez's allegations of apprehension during a routine traffic stop, forced production of his identification, and placement in an unairconditioned "sealed" cruiser for over an hour. Filing 1 at 20 (¶ 67). The Court will consider these two parts of the due process claim separately.

*1. The Allegedly Unjustified Continued Detention*

The first part of Santiago Lopez's due process cause of action alleges the following:

> 66. The government's detention of Petitioner is unjustified. Respondents have not demonstrated that Petitioner needs to be detained. *See Zadvydas*, 533 US at 690 (finding immigration detention must further the twin goals of (1) ensuring the noncitizen's appearance during removal proceedings and (2) preventing danger to the community). There is no credible argument that Petitioner cannot be safely released back to his community and family.

Filing 1 at 20 (¶ 66). For this reason, Santiago Lopez alleges that his "detention violates the Due Process Clause of the Fifth Amendment." Filing 1 at 21 (¶ 68). The Court begins its analysis of this claim with a summary of the parties' arguments.

a. The Parties' Arguments

Santiago Lopez argues that in the immigration context the Supreme Court only recognizes preventing flight and mitigating the risks of danger to the community as justifications for an individual's physical restraint. Filing 1 at 8 (¶ 32). He contends that consideration of the factors set out in *Mathews v. Eldridge*, 424 U.S. at 319, 333 (1976), demonstrates the due process violation in his continued detention. Filing 1 at 9 (¶ 33), 19 (¶¶ 60–62). Federal Respondents argue that Santiago Lopez's temporary detention does not offend due process. Filing 16 at 12. They contend that once a mandatory detention statute applies, as § 1225(b)(2) does here, a due process challenge to such detention is defeated by applicable caselaw, citing *Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024). Filing 16 at 12–15. In reply, Santiago Lopez reiterates that consideration of the *Mathews* factors demonstrates the violation of his due process rights. Filing 20 at 8–12.

b. Santiago Lopez's Due Process Claim Based on Continued Detention Is Meritless

The Court does not find it necessary or appropriate to analyze Santiago Lopez's due process claim based on continued detention by applying the *Mathews* three-factor test on which he relies. *See* Filing 1 at 8–9 (Claim for Relief). Indeed, the Court has denied every such claim that an alien has asserted based on challenging detention pending removal.

In *Alberto Rodriguez v. Jeffreys*, No. 8:25CV714, 2025 WL 3754411, at *15–17 (D. Neb. Dec. 29, 2025), the Court denied such a claim based on *Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024). In *Banyee*, the Eighth Circuit explained that "[t]he rule has been clear for decades: '[d]etention during deportation proceedings [i]s . . . constitutionally valid.'" *Banyee*, 115 F.4th at 931 (quoting *Demore v. Kim*, 538 U.S. 510, 523 (2003)). The Eighth Circuit explained,

> [In *Demore*, the Supreme Court] reaffirmed its "longstanding view that the [g]overnment may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Demore*, 538 U.S. at 526, 123 S.Ct. 1708. The reason, according to the Court, was that "Congress may make rules

> as to aliens that would be unacceptable if applied to citizens." *Id.* at 522, 123 S.Ct. 1708; *accord* *Mathews v. Diaz*, 426 U.S. 67, 79–80, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976). In other words, the government has more flexibility when dealing with immigration. *See, e.g., United States v. Quintana*, 623 F.3d 1237, 1242 (8th Cir. 2010) (explaining that the "constitutional[ ] valid[ity]" of detention pending deportation means that the usual limits on *Terry* stops "do[ ] not apply to ... administrative arrest[s] based upon probable cause that an alien is deportable"); *see also* *Wong Wing v. United States*, 163 U.S. 228, 235, 16 S.Ct. 977, 41 L.Ed. 140 (1896) (explaining that the power to deport "would be vain if those accused could not be held in custody pending [an] inquiry into their true character and while arrangements were being made for their deportation").

*Banyee*, 115 F.4th at 931.

The Eighth Circuit explained further,

> It is true, as Banyee emphasizes, that the Court has described detention pending deportation as "brief," "limited," and "short[ ]." *Demore*, 538 U.S. at 513, 523, 526, 528–29, 531, 123 S.Ct. 1708. But nothing suggests that length determines legality. To the contrary, what matters is that detention pending deportation "ha[s] a definite termination point"—deporting or releasing the alien—making it "materially different" from the "potentially permanent" confinement authorized by other statutes. *Id.* at 528–29, 123 S.Ct. 1708 (citation omitted); *see* *Zadvydas v. Davis*, 533 U.S. 678, 697, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) (drawing the same definite-versus-indefinite distinction); *cf.* *Borrero v. Aljets*, 325 F.3d 1003, 1008 (8th Cir. 2003) (holding that even indefinite detention can be constitutional for "alien[s] who [are] stopped at the border"). The *why*, in other words, is more important than *how long*. *See* *Zadvydas*, 533 U.S. at 693–94, 121 S.Ct. 2491 (noting that "the nature of th[e] protection" to which aliens are entitled "var[ies] depending upon *status and circumstance*" (emphasis added)).

*Banyee*, 115 F.4th at 932 (emphasis in the original).

Most critically, the Eighth Circuit then stated,

> These cases leave no room for a multi-factor "reasonableness" test. It is true, as Banyee has pointed out, that deciding what process is due ordinarily requires a form of interest balancing. *See* *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). But *Zadvydas* and *Demore* have already done whatever balancing is necessary. *See, e.g., Zadvydas*, 533 U.S. at 682, 701, 121 S.Ct. 2491 (linking a "'reasonable time' limitation" to "the likelihood of removal in the reasonably foreseeable future"); *Demore*, 538 U.S. at 528, 123 S.Ct. 1708 (explaining that, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means," so it is sufficient if "detention necessarily serves the purpose of preventing deportable aliens from fleeing prior to or during their removal proceedings"). Indeed, the lead dissent in *Demore* advocated for the type of "individual determination" Banyee

> now seeks, presumably under a *Mathews*-type inquiry. 538 U.S. at 549–58, 561 n.16, 123 S.Ct. 1708 (Souter, J., concurring in part and dissenting in part); *cf. Flores*, 507 U.S. at 314 n.9, 113 S.Ct. 1439 (rejecting *another* dissent's call for "fully individualized custody determinations"). The majority opted for a bright-line rule instead: the government can detain an alien for as long as deportation proceedings are still "pending." *Demore*, 538 U.S. at 527, 123 S.Ct. 1708 (majority opinion).

*Banyee*, 115 F.4th at 933 (emphasis in the original).

For Santiago Lopez, like the petitioner in *Banyee*, the removal proceedings are still pending. *Id.* Because Santiago Lopez's detention is pursuant to § 1225(b)—for the reasons explained below in § II.C.—there is no authorization for a bond hearing. *See Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018) (explaining that "neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings"). To the extent that Santiago Lopez contends that he is being held without an individualized detention hearing under § 1226, his detention is pursuant to § 1225(b) without any bond provision. "Congress may make rules as to aliens that would be unacceptable if applied to citizens," and "the government has more flexibility when dealing with immigration." *Banyee*, 115 F.4th at 931 (internal quotation marks and citations omitted).

Santiago Lopez cannot meet his burden based on the allegations in his Petition to show that continued detention is in violation of due process in this part of his first cause of action. *See* 28 U.S.C. § 2241(c)(3) (stating detention in violation of federal law is a ground for habeas relief); 28 U.S.C. § 2243 (stating that an order to show cause must issue "unless it appears from the application that the applicant or person detained is not entitled" to a writ of habeas corpus); *Maldonado*, 2025 WL 2374411, at *4 (explaining that a habeas petitioner under § 2241 bears the burden of demonstrating by a preponderance of the evidence that his or her detention is unlawful (collecting cases)).

*2. The Allegedly Unconstitutional Traffic Stop*

The second part of Santiago Lopez's due process cause of action alleges the following:

> 67. The Respondent was apprehended during a routine traffic stop in which he was not the driver, forced under duress to provide identification, and place in an unairconditioned sealed cruiser for over an hour forcing him to call 911 to prevent his death.

Filing 1 at 20 (¶ 67). For this reason, Santiago Lopez alleges that his "detention violates the Due Process Clause of the Fifth Amendment." Filing 1 at 21 (¶ 68). The Court begins its analysis of this claim with a summary of the parties' arguments.

a. The Parties' Arguments

Santiago Lopez does not clearly explain in his Petition why he is entitled to habeas relief based on the allegation in paragraph 67 of his Petition. He also does not clearly explain why this cause of action alleges a Fifth Amendment due process violation rather than a Fourth Amendment search and seizure violation, if it asserts any constitutional violation at all.

Federal Respondents argue that even assuming for the sake of argument that there were any violations or irregularities with Santiago Lopez's arrest, those violations are not a cognizable basis for habeas relief under § 2241(c)(3). Filing 16 at 5. Federal Respondents point out that the office of the writ of habeas corpus is the legality of a prisoner's current detention. Filing 16 at 5. Thus, they contend that courts have long recognized that an unlawful arrest by itself does not warrant release on a writ of habeas corpus. Filing 16 at 6. Therefore, Federal Respondents argue that allegations of an unlawful arrest, even if true, do not warrant habeas relief. Filing 16 at 7.

In reply, Santiago Lopez argues that he was arrested by a government actor who did not have the statutory power to inspect aliens inside the United States for immigration status and when he was a passenger in a car who was not suspected of having committed any crime. Filing 20 at 1–2.

b. An Allegedly Unlawful Arrest Is Not a Basis for § 2241 Relief

The Court rejects Santiago Lopez's unlawful arrest claim in his first cause of action—whether framed as a Fifth Amendment or a Fourth Amendment violation—because it is not a cognizable claim for § 2241 habeas relief. As the Court pointed out above, "Habeas is at its core a remedy for unlawful executive detention." *Manaf*, 553 U.S. at 693 (citing *Hamdi*, 542 U.S. at 536 (plurality opinion)). To put it another way, "Habeas has traditionally been a means to secure *release* from unlawful detention. . . ." *Thuraissigiam*, 591 U.S. at 107 (emphasis in the original). Santiago Lopez's detention is for an alleged immigration violation, and his arrest is too far afield from that detention to warrant habeas relief.

As another judge of this district explained,

> Even if [an alien petitioner's allegation that his arrest was improper] were true, it would not entitle him to the relief he seeks. *See Romero v. Brown*, 2026 WL 1021455, at *3 (S.D. Iowa Apr. 15, 2026). His arguments relate solely to the initial traffic stop, not his ongoing detention, and "[a] Fourth Amendment violation at the moment of arrest provides scant justification for a subsequent release from custody or a bond hearing." *Id.* (citing *Munaf v. Geren*, 553 U.S. 674, 693 (2008)). Other principles further suggest a Fourth Amendment violation does not lead to release from immigration detention in circumstances like this. *See, e.g.*, *INS v. Lopez Mendoza*, 468 U.S. 1032, 1040 (1984) ("[A]n illegal arrest has no bearing on a subsequent deportation proceeding."); *Lopez-Fernandez v. Holder*, 735 F.3d 1043, 1046 (8th Cir. 2013) ("The exclusionary rule generally does not apply in civil deportation proceedings when there is a Fourth Amendment violation standing alone.").

*Castaneda v. McCook*, No. 4:26CV3170, 2026 WL 1724688, at *3 (D. Neb. June 15, 2026). To put it another way, § 2241 does not provide for relief except in enumerated circumstances. 8 U.S.C. § 2241(c) ("The writ of habeas corpus shall not extend to a prisoner unless" one of the listed circumstances applies). Santiago Lopez's challenge to his initial arrest is not a claim for relief within the scope of the only possible § 2241 circumstances, which is that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 8 U.S.C. § 2241(c)(3).

Because Santiago Lopez's challenge to his initial arrest is not a challenge to his ongoing detention for alleged immigration violations, it is not a basis for § 2241 relief.[3]

Santiago Lopez fails to carry his burden to show that he is entitled to habeas relief on this part of first cause of action alleging a due process violation. *See* 28 U.S.C. § 2241(c)(3) (stating detention in violation of federal law is a ground for habeas relief); 28 U.S.C. § 2243 (stating that an order to show cause must issue "unless it appears from the application that the applicant or person detained is not entitled" to a writ of habeas corpus); *Maldonado*, 2025 WL 2374411, at *4 (placing the burden of proof on the petitioner).

### C. The Alleged Violation of the Immigration and Nationality Act

Santiago Lopez's second cause of action alleges "Violation of Immigration and Nationality Act." Filing 1 at 21. Specifically, Petitioner alleges the following:

> 70. Petitioner was detained pursuant to "authority contained in section 236" of the INA; section 236 is codified at 8 U.S.C. § 1226. Despite this, DHS now argues that he is detained subject to 8 U.S.C. § 1225(b)(2).
>
> 71. The mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to all noncitizens residing in the United States who are subject to the grounds of inadmissibility. 1225(b) only stands to persons presenting themselves for inspection by an[ ] immigration officer not persons apprehended in the United States. Mandatory detention is not applicable to individuals who have previously entered the United States and have been residing here prior to their apprehension and subsequent removal proceedings initiated by Respondents. Such noncitizens

---

[3] Because the Court finds this argument dispositive, it does not reach Federal Respondents' alternative argument that Santiago Lopez's arrest was in fact lawful because the vehicle in which he was a passenger was stopped for speeding, he was then properly detained based on probable cause to believe that he was in violation of immigration laws, and his warrantless arrest was permitted because he was in a vehicle on an interstate highway and thus a flight risk. Filing 16 at 8–10. Nevertheless, the Court observes that the weight of authority is against Santiago Lopez. *See Waters v. Madson*, 921 F.3d 725, 739 (8th Cir. 2019) ("It is well-settled law in this circuit that both a passenger and a driver are seized during a Terry stop of a vehicle. If an officer acts lawfully in detaining the driver, he acts lawfully in concurrently detaining the passenger." (citations omitted)); *United States v. Quintana*, 623 F.3d 1237, 1242 (8th Cir. 2010) (explaining that the prohibition on a Terry stop that continues for an excessive period of time does not apply to detention following an administrative arrest upon probable cause that an alien is deportable and that warrantless arrest during a traffic stop of an alien illegally in the United States is proper because the alien was "likely to escape"); *Arizona v. United States*, 567 U.S. 387, 408 (2012) (explaining that state officers "may arrest an alien for being 'in the United States in violation of any [immigration] law or regulation,' but only where the alien 'is likely to escape before a warrant can be obtained.'" (citing 8 U.S.C. § 1357(a)(2)).

> are detained under § 1226(a) and are eligible for release on bond, unless they are subject to § 1225(b)(1), § 1226(c), or § 1231.
>
> 72. Respondents have wrongfully adopted a policy and practice of arguing all noncitizens, such as Petitioner, are subject to mandatory detention under § 1225(b)(2).

Filing 1 at 21 (¶¶ 70–72). The Court begins analysis of this claim with a summary of the parties' arguments.

*1. The Parties' Arguments*

As framed in paragraphs 70 and 71, this claim appears little different from claims for habeas relief by other aliens that the Court has repeatedly rejected based on allegedly erroneous detention without bond under § 1225(b)(2) instead of under § 1226. Where this claim differs is in some of the arguments in support of the allegedly erroneous application of § 1225(b)(2) and the additional assertion that the adoption of a policy and practice of treating all noncitizens as subject to § 1225(b)(2) was wrongful. Filing 1 at 21 (¶ 72).

One of Santiago Lopez's new arguments is an attempt to evade the Eighth Circuit's decision in *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). Santiago Lopez argues that in *Avila*, the Eighth Circuit "was interpreting merely the statement 'seeking admission' and not the purpose of the officer at the time of the encounter." Filing 1 at 13 (¶ 45). His argument runs as follows:

> The statute is written to direct officers who are encountering individuals in different contexts and directs them as whether they are to detain them or if they need a warrant to detain them, and they remain eligible for bond. The text reads together "an alien who is an applicant for admission, if the examining officer determines that an alien seeking admission". The 8th Circuit examined the statute under simply the light of who can be found to be seeking admission. However, again, the act directs the actions to be taken by the officer at that time, not the status of the applicant for admission. Aliens at the border or who are encountered near the border are examined as arriving aliens, aliens seeking admission. Other aliens are apprehended. [Section] 1225 continues with several subsections with section (a) title "Inspection" (b) titled "Inspection of applicants for admission". This section is directing officers at the border who are "inspecting" persons seeking admission to the United States.

Filing 1 at 13–14 (¶ 45). In support of this view, Santiago Lopez argues that "[p]rior to the new interpretation of the law [INA §] 212(a)(7) [8 U.S.C. § 1182(a)(7)] charges were given at the border and time of entry and [INA §] 212(a)(6) [8 U.S.C. § 1182(a)(7)] charges were given to person[s] in the US without permission," which Santiago Lopez argues is consistent with § 1225 and § 1226. Filing 1 at 15 (¶ 48). As he reads the statutes, inspection at the time of entry is required to support a charge under § 1182(a)(7)(A)(i), while being present without being admitted or paroled or arriving at a time or place other than as specifically designated supports a charge under § 1182(a)(6). Filing 1 at 15 (¶ 48). In short, Santiago Lopez's argument is that the difference between § 1225 and § 1226 is not the term "applicant for admission" but "the manner of encounter in the United States." Filing 1 at 16 (¶ 50).

In response, Federal Respondents assert their usual argument that the analysis "is simple." Filing 16 at 5. They assert that because Santiago Lopez is an "applicant for admission" as defined in § 1225(a)(1) and construed by the Eighth Circuit in *Avila*, and he was unlawfully present in the United States without admission, his detention pending removal is mandatory pursuant to § 1225(b)(2)(A). Filing 16 at 5.

In his reply, Santiago Lopez argues that he only became an "applicant for admission" as a result of his unlawful "inspection" during the stop of the vehicle in which he was a passenger. Filing 20 at 1–2. He contends,

> The question that has been asked is whether persons inside the United States are applicants for admission. The Petitioner argues that is the wrong question. The question about jurisdiction does not lie with the position of the subject but rather the manner and location of encounter.

Filing 20 at 3. Santiago Lopez argues that the current interpretation of the mandatory detention sections of the INA seeks to expand "the relaxed version" of the Fourth Amendment applicable to aliens at or near the border to the entirety of the United States, so that immigration and local law

enforcement officers can "inspect" and detain those aliens without a warrant and without possibility of a bond. Filing 20 at 6. He argues that the United States Constitution requires that § 1225 apply only to applicants for admission who are being inspected at the border. Filing 20 at 6.

2. *Avila Is Controlling on the Applicability of § 1225(b)(2) to Petitioner*

The basis for Santiago Lopez's argument that he was arrested pursuant to § 1226 rather than § 1225 is that he was encountered within the United States so he must be detained pursuant to § 1226 and that focusing on whether or not he is an applicant for admission is the wrong question.[4] The Court is not convinced that *Avila* either asked or answered the wrong question, so that *Avila* is controlling here.

As to the location of the encounter, in *Avila*, the Eighth Circuit rejected a reading of *Jennings v. Rodriguez*, 583 U.S. 281 (2018), as interpreting § 1225 to apply to aliens detained at the border and § 1226 to apply to aliens detained in the interior. 170 F.4th at 1136 (explaining that "this characterization was offered only as general background information" not as resolution of an interpretation issue). The Eighth Circuit explained that even if § 1226 generally authorizes the Government to detain certain aliens already in the country, "this does not preclude other statutory provisions—such as § 1225(b)(2)(A)—from also applying to such aliens." *Id.* (citing *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 505 (5th Cir. 2026), and 8 U.S.C. § 1225(a)(1)). The *Avila* court

[4] Santiago Lopez also argues that he "was detained pursuant to 'authority contained in section 236 [§ 1226],'" although what he is quoting is not clear. Filing 1 at 21 (¶ 70). The warrant for his arrest is "authorized pursuant to section[ ] 236" Filing 18-2 at 1. That reference does not demonstrate that Santiago Lopez was detained pursuant to § 1226(a). Rather, it states that the immigration officer arresting the alien must be "authorized pursuant to section[ ] 236." Filing 13-2 at 1. Section 236 (§ 1226(a)) permits the arrest of an alien "[o]n a warrant issued by the Attorney General," but that authorization for arrest on a warrant does not establish that the alien is or is to be detained under § 1226(a) when arrested. 8 U.S.C. § 1226(a). The warrant also references an officer authorized pursuant INA 287, which is codified at 8 U.S.C. § 1357. Pursuant to 8 U.S.C. § 1357, state officers "may arrest an alien for being 'in the United States in violation of any [immigration] law or regulation,' but only where the alien 'is likely to escape before a warrant can be obtained.'" *Arizona v. United States*, 567 U.S. 387, 408 (2012) (quoting 8 U.S.C. § 1357(a)(2)).

explained further that § 1225(a)(1) is not limited to an "arriving alien"; instead, it applies to "[a]n alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). *Id.* at 1133. In *Avila*, the Eighth Circuit soundly rejected a reading of § 1225(b)(2)(A) as treating "applicant for admission" and "seeking admission" as separate elements. *Id.* at 1133–35 (concluding that the two phrases were "equivalent," so that "seeking admission" was not a separate element under § 1225(b)(2)).

Although Santiago Lopez makes no allegation about when, where, or how he entered the United States, nowhere in his Petition does he allege that he was admitted or paroled into the United States. *See* Filing 1 *passim*; *see also* 8 U.S.C. § 1225(a)(1) (defining an "applicant for admission" first as "[a]n alien present in the United States who has not been admitted" and alternatively as "an alien . . . who arrives in the United States"). His Form I-213 states that he had been repeatedly arrested near the border in El Paso, Texas; Columbus, New Mexico; and Douglas, Arizona, and each time he was granted Voluntary Return. Filing 1-2 at 4. Because there is no evidence or even an allegation that Santiago Lopez arrived at a port of entry and was admitted, he fell within the definition of an "applicant for admission" as "[a]n alien present in the United States who has not been admitted" set out in § 1225(a) as interpreted by the Eighth Circuit when he was encountered in the United States on August 11, 2026.

Next, the court in *Avila* stated, "[Section] 1225(b)(2)(A) authorizes detention without bond for 'an alien who is an applicant for admission, if . . . an alien seeking admission is not clearly and beyond a doubt entitled to be admitted.'" *Avila*, 170 F.4th at 1132 (quoting § 1225(b)(2)). Santiago Lopez's I-213 also clearly states, "Subject entered the United States illegally without admission or inspection on an unknown date at an unknown location." Filing 1-2 at 4. Neither the statute nor *Avila* prohibits law enforcement officers besides immigration officers from reviewing an alien's

immigration records, if any, to determine whether the alien has already been clearly and beyond a doubt determined to be entitled to be admitted. Where no DHS or ICE official ever made any determination that Santiago Lopez is "clearly and beyond a doubt entitled to be admitted," a law enforcement officer could act on that information from DHS records, and Santiago Lopez could then be "detained for a proceeding under section 1229a" pursuant to § 1225(b)(2)(A). In the circumstances of the stop of the vehicle in which Santiago Lopez was a passenger, the state trooper did not conduct an "inspection"; rather, the state trooper acted on the lack of an "inspection" by an immigration officer and the lack of a determination by any immigration officer that Santiago Lopez was entitled to be admitted. Because Santiago Lopez's detention is proper pursuant to § 1225(b), there is no statutory authorization for a bond hearing. *See Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018) (explaining that "neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings").

The Court also finds unavailing Santiago Lopez's argument that the United States Constitution requires that § 1225 apply only to applicants for admission who are being inspected at the border not to all unadmitted aliens in the United States. Filing 20 at 6. As explained above in § II.B.1, in *Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024), the Eighth Circuit explained that "[t]he rule has been clear for decades: '[d]etention during deportation proceedings [i]s . . . constitutionally valid.'" *Banyee*, 115 F.4th at 931 (quoting *Demore*, 538 U.S. at 523). That statement was not dependent in any way on the location in which an alien illegally present in the United States is encountered. Thus, the place of encounter inside the United States does not make the application of § 1225 contrary to the United States Constitution.

Santiago Lopez fails to carry his burden to show that he is entitled to habeas relief on his second cause of action asserting violation of the INA. *See* 28 U.S.C. § 2241(c)(3) (stating detention

in violation of federal law is a ground for habeas relief); 28 U.S.C. § 2243 (stating that an order to show cause must issue "unless it appears from the application that the applicant or person detained is not entitled" to a writ of habeas corpus); *Maldonado*, 2025 WL 2374411, at *4 (placing the burden of proof on the petitioner).

### D. The Alleged Fourth Amendment Violation

#### *1. The Claim and Santiago Lopez's Argument*

Santiago Lopez's third cause of action alleges "Violation of The Fourth Amendment of the US Constitution" based on the enforcement of § 1225(b)(2) inside the United States. Filing 1 at 21. Santiago Lopez alleges that such enforcement compels persons to demonstrate their legal status in the United States and seek admission upon any interaction with immigration or other law enforcement officers instead of requiring such officers to have a warrant or probable cause that a person committed a crime to arrest that person. Filing 1 at 21–22 (¶ 73). This claim in its entirety states the following:

> 73. *Noem v. Vasquez Perdomo*, 606 U.S. ___, [146 S. Ct. 1]_(2025), found that the Government must have reasonable suspicion that an individual is illegally present in the United States. It goes on to say that the "immigration officers may briefly stop the individual and inquire about immigration status. If the person is a U.S. citizen or otherwise lawfully in the United States, that individual will be free to go." *Id.* According to the 8th Circuit court of appeals these persons stopped are applicants for admission and upon encounter by an immigration officer they must demonstrate "clearly and beyond a reasonable doubt" that they are "entitled to be admitted" or be "detained for a proceedings [sic] under section 1229a. INA 1225(2)(B). There is no need for an immigration [officer] to apprehend the individual as they have been encountered and are now subject to mandatory detention under the INA. Under the Fourth Amendment police need a warrant or probable cause that you committed a crime to arrest you. Enforcing INA 1225 inside the United States means that persons must demonstrate that they have legal status in the United States and seek admission upon any interaction with immigration officers. Without proof that they are entitled to be admitted they can be detained. This is a clear violation of the Fou[r]th Amendment of the US Constitution.

Filing 1 at 21–22 (¶ 73).

In his reply, Santiago Lopez reiterates his reliance on the purported holding in *Noem v. Vasquez Perdomo* as well as a comment by Justice Kavanaugh in in *Trump v. Illinois*, 607 U.S. ___, 146 S. Ct. 432 (2025). Filing 20 at 4. Santiago Lopez then contends,

> The Fourth Amendment requires that other than brief questioning of a suspected immigrant inside the United States the officer must have a reasonable suspicion of illegal presence and then make an arrest based upon probable cause. It does not permit the prolonged detention of individuals inside the United States, nor does it permit the inspection of individuals inside the United States.

Filing 20 at 5.

It does not appear that Federal Respondents' Return addresses this claim.

*2. Santiago Lopez's Fourth Amendment Claim Is Built on Faulty Premises*

The Federal Respondents' failure to respond to this claim notwithstanding, the Court finds that the claim on its face and as argued in Santiago Lopez's Reply warrants no relief. First, the majority opinion of the Supreme Court in *Noem v. Vasquez Perdomo*, 606 U.S. ___, 146 S. Ct. 1 (2025) (Mem.), does not include the statements Santiago Lopez purportedly quotes from that opinion. Rather, the majority opinion simply grants a stay pending an appeal to the Ninth Circuit and the disposition of a petition for a writ of certiorari, if one is made. *Vasquez Perdomo*, 146 S. Ct. at 1. The statement that Santiago Lopez quotes is from Justice Kavanaugh's concurrence in the grant of the application for a stay. *See id.* at *3. Likewise, Justice Kavanaugh's footnote in *Trump v. Illinois*, 607 U.S. ___, 146 S. Ct. 432 (2025), while it contains the statement attributed to him, is not in the majority opinion either but in Justice Kavanaugh's concurrence. 146 S. Ct. at 436 n.4 (Kavanaugh, J., concurring) ("The basic constitutional rules governing that dispute are longstanding and clear: The Fourth Amendment requires that immigration stops must be based on reasonable suspicion of illegal presence, stops must be brief, arrests must be based on probable cause, and officers must not employ excessive force."). In neither place does Justice Kavanaugh cite any precedent for the statements. Thus, Santiago Lopez has not cited controlling law.

The dispositive flaw in Santiago Lopez's argument, however, is that the state trooper had reasonable suspicion to stop the vehicle in which Santiago Lopez was a passenger because the vehicle was speeding—whether the occupants of the vehicle were legal or illegal aliens was irrelevant to the stop. *See, e.g.*, *United States v. Maurstad*, 35 F.4th 1139, 1144 (8th Cir. 2022) (stating that a speeding violation alone provided reasonable suspicion for a stop); *United States v. Gonzalez-Carmona*, 35 F.4th 636, 640 (8th Cir. 2022) ("[A]ny traffic violation, no matter how minor, is sufficient to provide an officer with probable cause." (quoting *United States v. Foster*, 15 F.4th 874, 877 (8th Cir. 2021)). Any occupant of the vehicle during such a stop can properly be asked for identification and the officer conducting the stop may run a check. *United States v. Hamdan*, 168 F.4th 1087, 1091 (8th Cir. 2026) ("A traffic stop's 'routine tasks' also 'may include asking a passenger for identification and running a computer check if the passenger consents to the request for identification." (*United States v. Ward*, 140 F.4th 945, 951 (8th Cir. 2025)).

"[A]n individual born abroad is presumed to be an alien and bears the burden of rebutting that presumption." *Mendoza v. United States Immigr. & Customs Enf't*, 849 F.3d 408, 417 (8th Cir. 2017) (quoting *Nadal–Ginard v. Holder*, 558 F.3d 61, 68 (1st Cir. 2009)). Also, "there is no rule of law which prohibits officers charged with the administration of the immigration law from drawing an inference from the silence of one who is called upon to speak." *Id.* (quoting *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 154 (1923)). More specifically, the Eighth Circuit has held that an officer acquired probable cause during a valid traffic stop to take a person into administrative custody as a deportable alien where the person admitted that he was a Mexican national; his excuse for not having immigration documents in his possession was only superficially plausible; and a preliminary search of immigration records returned no immigration history, point-of-entry crossing, or visa information. *United States v. Quintana*, 623 F.3d 1237, 1241 (8th Cir.

2010). In these circumstances, the Eighth Circuit held that the officer "made a sufficient showing of probable cause to believe that [the person] was a deportable alien." *Id.* In Santiago Lopez's case, he voluntarily provided only Mexican identification, he otherwise remained silent, and a check of immigration records indicated that he had not been admitted to the United States, so there was probable cause to conclude that he was illegally present here. *Cf. id.*

Thus, enforcing § 1225 inside the United States may mean that persons stopped for other reasons must produce identification and may ultimately be required to demonstrate that they have legal status in the United States. *See Mendoza*, 849 F.3d at 417 (an individual born abroad bears the burden of rebutting the presumption of alienage). However, Santiago Lopez was not required to rebut the presumption of alienage at the time of the stop.

More importantly, enforcement of § 1225 does not require aliens to "seek admission" upon any interaction with law enforcement officers; their status as "applicants for admission" and thus "seeking admission" is established by their presence in the United States without being admitted. 8 U.S.C. § 1225(a)(1); *Avila*, 170 F.4th at 1133–35 (concluding that the two phrases were "equivalent," so that "seeking admission" was not a separate element under § 1225(b)(2)). If a law enforcement officer's check of identification leads to probable cause to believe that the person is an alien who has not been admitted to the United States—as was the case here—it is the records check and resulting probable cause that the person is here illegally that may lead to detention of the alien. *Quintana*, 623 F.3d at 1241; *Nadal–Ginard*, 558 F.3d at 68; *see also Arizona v. United States*, 567 U.S. 387, 408 (2012) (explaining that state officers "may arrest an alien for being 'in the United States in violation of any [immigration] law or regulation,' but only where the alien 'is likely to escape before a warrant can be obtained.'" (quoting 8 U.S.C. § 1357(a)(2)). There was no Fourth Amendment violation from enforcement of § 1225(b)(2) within the United States under

applicable law. Certainly, in Santiago Lopez's case, there was no Fourth Amendment violation in a stop of a vehicle in which Santiago Lopez was a passenger for speeding or the subsequent check of identification that led to his warrantless arrest based on concerns that he was likely to escape and probable cause that he was in the United States in violation of the immigration laws where Santiago Lopez was in a vehicle stopped on an interstate highway. *Quintana*, 623 F.3d at 1241.

Santiago Lopez fails to carry his burden to show that he is entitled to habeas relief on his third cause of action asserting a Fourth Amendment violation. *See* 28 U.S.C. § 2241(c)(3) (stating detention in violation of federal law is a ground for habeas relief); 28 U.S.C. § 2243 (stating that an order to show cause must issue "unless it appears from the application that the applicant or person detained is not entitled" to a writ of habeas corpus); *Maldonado*, 2025 WL 2374411, at *4 (placing the burden of proof on the petitioner).

### E. The Alleged Fourteenth Amendment Violation

*1. The Claim*

Santiago Lopez's last cause of action alleges "Violation of the Fourteenth Amendment of the Constitution." Filing 1 at 22. This claim in its entirety states the following:

> 74. The Fourteenth Amendment states that "no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; no[r] shall any state deprive any person of life, liberty, or property, without due process of law". By subjecting the Petitioner to an illegal search, then detaining him without a warrant placing his life in danger and then detaining him overnight the State has propagated the denial of equal protection to the Petitioner simply because he was brown and could not proof [sic] legal status in the United States. In addition, the statute violates the right to equal protection of the law as it allows for the loss of life, liberty, and property based upon ethnicity. Requiring anyone who is suspected of being an immigrant to stop, seizure and detention without any articulable suspicion or judicial warrant.

Filing 1 at 22–23 (¶ 74). Federal Respondents do not appear to respond to this claim, nor does Santiago Lopez appear to make any further argument in support of a Fourteenth Amendment equal protection claim in his Reply.

*2. Santiago Lopez's Fourteenth Amendment Claim Is Also Built on Faulty Premises*

Again, the Federal Respondents' failure to respond to this claim notwithstanding, the Court finds that this claim on its face warrants no relief. First, the record demonstrates that Santiago Lopez was not subjected to an "illegal search," improperly detained without a warrant, placed in danger, at all or because he was brown. There was probable cause to stop the vehicle in which Santiago Lopez was a passenger because the vehicle was speeding. *Maurstad*, 35 F.4th at 1144; *Gonzalez-Carmona*, 35 F.4th at 640. Neither the request for his identification, which indicated that he was Mexican, nor the check of that identification for immigration status was an illegal search because both were proper incident to a traffic stop. *Hamdan*, 168 F.4th at 1091. Santiago Lopez was then properly detained without a warrant when the check provided probable cause to believe that he was in the United States in violation of immigration law, *see Quintana*, 623 F.3d at 1241; *Nadal–Ginard*, 558 F.3d at 68; *Arizona v. United States*, 567 U.S. at 408, and there was a reasonable concern that he was likely to escape where he was stopped in a vehicle on an interstate highway, *see Quintana*, 623 F.3d at 1241. There is no evidence other than Santiago Lopez's undocumented assertion that he was placed in a cruiser for over an hour. *Compare* Filing 1 at 20 (¶ 67) (alleging that Santiago Lopez was placed in an unairconditioned sealed cruiser for over an hour forcing him to call 911 to prevent his death) *with* Filing 18 at 4 (¶ 20) (finding no ICE records that reflected any 911 call, the length of Santiago Lopez's time spent in the Nebraska State Patrol vehicle, or the temperature of the vehicle). Probable cause for the arrest for illegal presence in the United States existed without regard to Santiago Lopez's skin color or ethnicity—indeed, there is no indication that either his skin color or ethnicity was even considered by the arresting officer.

Santiago Lopez fails to carry his burden to show that he is entitled to habeas relief on his last cause of action asserting a Fourteenth Amendment violation. *See* 28 U.S.C. § 2241(c)(3)

(stating detention in violation of federal law is a ground for habeas relief); 28 U.S.C. § 2243 (stating that an order to show cause must issue "unless it appears from the application that the applicant or person detained is not entitled" to a writ of habeas corpus); *Maldonado*, 2025 WL 2374411, at *4 (placing the burden of proof on the petitioner).[5]

## III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that Petitioner Santiago Lopez's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, Filing 1, is denied.

The Clerk of Court shall close the case.

Dated this 21st day of October, 2026.

BY THE COURT:



Brian C. Buescher
Chief United States District Judge

[5] Santiago Lopez argues in his Reply that an unidentified decision of the Board of Immigration Appeals would suspend habeas corpus without legislative approval. Filing 20 at 12–13. There is no claim in Santiago Lopez's Petition based on allegedly unconstitutional suspension of the writ of habeas corpus. The Court has disregarded this argument as too vague and unsupported to warrant any relief.